UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DARRIHA WILLIAMS, | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 1:20-CV-00020 |
| | § | |
| METROPOLITAN SECURITY | § | |
| SERVICES, INC., | § | |
| dba WALDEN SECURITY, | § | |
| **Defendant.** | § | |

<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DARRIHA WILLIAMS, Plaintiff, to file Plaintiff's Original Petition, showing the Court the following:

## I. INTRODUCTION

1.  This is an action by DARRIHA WILLIAMS ("Plaintiff") against her former employer for race, color and sex discrimination, sexual harassment and hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 USC § 1981 and under § 21.051 & § 21.055 of the Texas Labor Code.

## II. JURISDICTION AND VENUE

2.  Jurisdiction is conferred on this Court by Title 28 U.S.C. §1331 & §1332.

3.  The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. §1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

1

4.     Venue is proper in this district under 28. U.S.C. §1391(b)(2).

### III.  PARTIES

5.     Plaintiff resides in Austin, Travis County, Texas.

6.     Defendant can be served through their registered agent, National Registered Agents, Inc., is a Tennessee corporation doing business in Texas which can be served at 16055 Space Center, Suite 235, Houston, Texas 77062

### IV.  CONDITIONS PRECEDENT

7.     All conditions precedent to Plaintiff's recovery against Defendant has been performed, waived, expired and/or occurred.

### V.  FACTS

8.     Plaintiff is a black, African American female.  She was employed with Defendant in Austin, Texas, as a security guard.  At all times, she was qualified for this position.  Defendant stated multiple times that Plaintiff was a good employee with "excellent customer service skills."

9.     Plaintiff was hired on October 15, 2018. She began work on November 8, 2018.  She worked at the Texas Health and Human Services Building on North Lamar which is a government building.  Her job was to watch a specific post in the building.

10.    Shortly after she was hired, another security guard, Read Almusawi (a middle eastern male), began sexually harassing her. Read worked at a post in an entirely different building from Plaintiff, but when he was in her building, he would come to her post and harass her. He said she was beautiful and sexy, and he talked about her buttocks.  He said that "African American women have bigger backsides."  She frequently caught him staring at

2

her buttocks.  He would even go as far as to whistle at her.  On one occasion he even said, "be my wife, be my wife!"  He frequently asked her to lunch and for her personal phone number.  After she declined, he changed.  He began saying things like, in middle eastern countries women are required to obey men and cover their head.  He said, if they do not, they get stoned to death and he even showed her a video of a woman being stone to death on his phone.  On several occasions, she told him to stop, to leave her alone and not to talk to her, but he continued.

11.    On November 16, 2018, Read again tried to flirt with Plaintiff and even asked about where she lived.  At that point, she had enough because he refused to leave her alone, so she contacted her supervisor, Bruce Brock (a Caucasian male), and told him about Read.  Mr. Brock called Read and told him to go back to his post.  Read left her post for about 5 minutes but then came back and confronted her about my complaint. Read yelled at her in his own language and gestured wildly with his hands in a fist.  He told her that she needed to obey men and that she would be considered "no good" in his country.  She repeatedly asked him to return to his post, but he refused. She was extremely afraid, so she contacted Mr. Brock again, and Mr. Brock called Read and told him to go back to his post yet again. Read left briefly again but came back to her post another 5 minutes later with his friend, Waad Alrubaye.  Waad was also a male middle eastern security guard whose post was separate from Plaintiff's in another building.

12.    Raed had Waad verify that women get stoned to death in their country for not obeying men. Then they both yelling at Plaintiff in English and in their own language.  They both said, "you obey men."  Plaintiff called Mr. Brock again, terrified, and begged him to come

over and help.  When Mr. Brock arrived, she was shaking and scared.  She asked Mr. Brock not to leave her alone with them.  Mr. Brock said that he that he had never seen Read so mad, and that he was not sure what he would do if he left, so he told Plaintiff to go home.

13.   After she left, she reported the incident to Carlos Deleon (a Hispanic Male), the Operations Manager who was also Mr. Brock's supervisor, and to the Human Resources Manager Candice Anderson.  She specifically used the words sexual harassment and racial discrimination.

14.   An hourly later, Candice called Plaintiff back and said Defendant came to the decision to let her go.  Plaintiff asked if she had done something wrong, and Candice did not answer.  Instead, she told Plaintiff she would process her last check.

15.   On November 19, 2018, Patty Boyd, the Regional Vice President of Walden, unexpectedly texted Plaintiff and asked her to call.  Ms. Boyd said that they had reviewed the surveillance video and confirmed that Read and Waad acted wrongfully.   She said Plaintiff was rehired and to come back to work the next day, and to report to Ray Alvarez (Hispanic Male).  She said that Waad and Raed would be removed from the building where Plaintiff worked.  However, they continued to work for the Defendant on the same property work in the building right next to where Plaintiff was located.

16.   On November 20, 2018, Plaintiff went back to work. Mr. Brock and Mr. Alvarez came up to her and asked her what she was doing there.  It is worth noting that Mr. Alvarez, Mr. Brock and Read had been with Walden a long time and were all good friends.  Plaintiff told them Ms. Boyd had rehired her.  Mr. Alvarez was upset about this and called her a "snitch."

4

17.     On November 27, 2018, Mr. Alvarez and Mr. Deleon came to Plaintiff's post.  This was the first time that she had seen these two together, it was the first time she saw Mr. Alvarez in the building, and only the second time that she had seen Mr. Deleon in the building. They told Plaintiff that she was terminated, to leave my company equipment on the desk, and to leave the building. Plaintiff was confused and sat there for a minute thinking about what she should do since Ms. Boyd had just hired her back, but then figured she had better get leave because it was a government building.  Immediately after leaving, she texted and called Ms. Boyd, and told her what happened.  Later that day, instead of calling her, Ms. Boyd texted Plaintiff saying that Mr. Deleon said she just left her equipment and walked off the job. Plaintiff told her that that was not what happened and that she had been terminated by Mr. Deleon.

18.     On November 28, 2018, despite the fact that Mr. Deleon was involved in terminating Plaintiff, and despite that fact that Ms. Boyd confirmed that she spoke with Mr. Deleon about Plaintiff's claim that she had been termination, Mr. Deleon sent the following disingenuous text message: "Good morning Ms. Williams as per our conversation yesterday morning, you were to report to the Winters building this morning at 6am. It has come to my attention you did not show up to work.  Any reason why?"

19.     Plaintiff followed up with Ms. Boyd, who confirmed that Plaintiff's employment had been terminated.

20.     On March 11, 2019, Plaintiff filed a charge of discrimination against Defendant jointly with the Texas Workforce Commission (TWC) and with the Equal Employment Opportunity Commission (EEOC).

5

21.   The EEOC issued a Notice of Right to Sue from the EEOC on November 13, 2019.

22.   The TWC issued its right to sue letter on January 3, 2020.

23.   Plaintiff filed this suit within ninety days of Plaintiff's receipt of the EEOC's Notice of Right to Sue and within 60 days of Plaintiff's receipt of TWC's Notice of Right to Sue. Accordingly, Plaintiff has timely filed this suit.

## VI. CAUSES OF ACTION

24.   Plaintiff repeats and re-alleges sections I-IV, the same as if fully set forth herein.

### A. SEX DISCRIMINATION,  SEXUAL HARASSMENT AND A HOSTILE WORK ENVIRONMENT

25.   Defendant discriminated against Plaintiff because of her sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and the Texas Labor Code, as amended ("TLC").

26.   Defendant subjected Plaintiff to harassment and a hostile work environment because of her sex (female) in violation of Title VII and the TLC. Defendant's harassment and a hostile work environment of Plaintiff resulted in a tangible employment action (termination).

27.   Defendant subjected Plaintiff to disparate treatment because of her sex (female) in that similarly situated employees outside of her protected classifications were treated more favorably under nearly identical circumstances in violation of Title VII and the TLC.

28.   Defendant terminated Plaintiff from her position with Defendant because of her sex (female) in violation of Title VII and the TLC.

29.     Defendant's alleged justification for Plaintiff's termination was pretext for sex discrimination in violation of Title VII and the TLC.

30.     Under Title VII and the TLC, Defendant is liable for sex discrimination.

31.     Defendant's sex discrimination was willful, malicious, and made with reckless disregard for Plaintiff's rights.

32.     Defendant's sex discrimination caused Plaintiff to suffer severe stress, mental anguish, emotional pain, suffering, and loss of enjoyment of life.

33.     Defendant is liable for back pay, front pay, punitive damages, compensatory damages, reasonable attorney's fees, and costs.

<u>B. RACE & COLOR DISCRIMINATION</u>

34.     Defendant discriminated against Plaintiff because of her race and color (African American and Black) in violation of Title VII, TLC and 42 USC § 1981 ("Section 1981").

35.     Defendant subjected Plaintiff to harassment and a hostile work environment because of her race and color (African American and Black) in violation of Title VII, TLC and Section 1981. Defendant's harassment and a hostile work environment of Plaintiff resulted in a tangible employment action (termination).

36.     Defendant subjected Plaintiff to disparate treatment because of her race and color (African American and Black) in that similarly situated employees outside of her protected classifications were treated more favorably under nearly identical circumstances in violation of Title VII, TLC and Section 1981.

37.     Defendant terminated Plaintiff from her position with Defendant because of her race and color (African American and Black) in violation of Title VII, TLC and Section 1981.

38.     Defendant's alleged justification for Plaintiff's termination was pretext for race and color discrimination in violation of Title VII, TLC and Section 1981.

39.     Under Title VII, TLC and Section 1981, Defendant is liable for race and color discrimination.

40.     Defendant's race and color discrimination was willful, malicious, and made with reckless disregard for Plaintiff's rights.

41.     Defendant's race and color discrimination caused Plaintiff to suffer severe stress, mental anguish, emotional pain, suffering, and loss of enjoyment of life.

42.     Defendant is liable for back pay, front pay, punitive damages, compensatory damages, reasonable attorney's fees, and costs.

## C. RETALIATION

43.     Defendant retaliated against Plaintiff for exercising her rights under Title VII, TLC and Section 1981 (opposing unlawful employment practices and making complaints of sexual harassment, hostile work environment and race discrimination), in violation of Title VII, TLC and Section 1981.

44.     Defendant terminated Plaintiff from her position with Defendant in retaliation for exercising her rights under Title VII, TLC and Section 1981 (opposing unlawful employment practices and making complaints of sexual harassment, hostile work environment and race discrimination) in violation of Title VII, TLC and Section 1981.

45.     Defendant's alleged justification for Plaintiff's termination was pretext for retaliation in violation of Title VII, TLC and Section 1981.

46.     Under Title VII, TLC and Section 1981, Defendant is liable for retaliation.

47.   Defendant's retaliation was willful, malicious, and made with reckless disregard for Plaintiff's rights.

48.   Defendant's retaliation caused Plaintiff to suffer severe stress, mental anguish, emotional pain, suffering, and loss of enjoyment of life.

49.   Defendant is liable for back pay, front pay, punitive damages, compensatory damages, reasonable attorney' fees, and costs.

<u>D. INCONSISTENT CAUSES OF ACTION</u>

50.   To the extent that any causes of action or theories pled by Plaintiff are deemed inconsistent, said inconsistent causes of action and/or theories are intended to be pled "In the Alternative."

**VII. ATTORNEYS' FEES**

51.   Plaintiff is also entitled to an award of their reasonable and necessary attorneys' fees under Title VII, TLC and Section 1981.

**VIII. JURY TRIAL**

52.   Plaintiff requests a jury trial.

**IX. PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein, and that on final trial Plaintiff have the following:

a.  Award Plaintiff back pay and front pay.

b. Award Plaintiff compensatory damages, including mental anguish damages.

c. Award Plaintiff punitive or exemplary damages.

d. Award Plaintiff general, actual and consequential damages.

9

e. Award Plaintiff prejudgment and post-judgment interest as provided by law.

f.  Award Plaintiff costs of suit and reasonable attorney's fees.

g. Award Plaintiff such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

THE LAW OFFICE OF
JACK QUENTIN NICHOLS
901 S. Mopac Expressway
Barton Oaks Plaza One, Suite 300
Austin, Texas 78746
(512) 595-1269

By:  /s/Jack Quentin Nichols
      Jack Quentin Nichols
      State Bar No. 24002692
      jack@jqnlaw.com [1]

ATTORNEY FOR PLAINTIFF

---

[1] Plaintiff's counsel agrees to service by email.

10